D. K. PORTER, Trustee in Bankruptcy, Appellant,

v.

STREVELL–PATERSON FINANCE CORPORATION, Appellee.

In the Matter of Byron Lee WALDRAM, Norma Williams Waldram, Willie Adrew Inman, Leah Rolls Inman, Delphin Magnus Post and Anna Mae Post, d/b/a Qualifreeze Co., Voluntary Bankrupts.

No. 6636.

United States Court of Appeals Tenth Circuit.

July 13, 1961.

Verl C. Ritchie, Salt Lake City, Utah, for appellant.

Dean E. Conder, Salt Lake City, Utah (Nielsen, Conder & Hansen, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Byron Lee Waldram, Norma Williams Waldram, Willie Adrew Inman, Leah Rolls Inman, Delphin Magnus Post and Anna Mae Post, doing business as Qualifreeze Company, filed a voluntary petition in bankruptcy on December 4, 1953, and on December 14, 1953, were duly adjudged bankrupts. Porter is the trustee of the estate of such bankrupts.

This is an appeal from an order of the District Court reversing an order of the referee in bankruptcy which required

Strevell-Paterson Finance Corporation [1] to pay the trustee $2,532.04, the amount which the Finance Corporation had charged to a reserve account held by it to protect it against losses occurring in the liquidation of certain conditional sale and installment payment contracts purchased by it from Qualifreeze Company.

Qualifreeze Company was engaged in the sale of freezers under conditional sales contracts which retained title in it and provided for the payment of the balance of the purchase price in installments.

From time to time, prior to bankruptcy, Qualifreeze Company transferred and assigned certain of such contracts to the Finance Corporation. Upon the acceptance of an assigned contract the Finance Corporation paid to Qualifreeze Company the balance due from the customer on such contract, less an amount which, under agreement of the parties, was credited to Qualifreeze Company and set up as a reserve account with the Finance Corporation. It was against credits to such reserve account that the amount in controversy here was charged.

On January 9, 1951, the individual members of the Qualifreeze Company executed and delivered to the Finance Corporation a statement of financial condition and guaranty of the performance by Qualifreeze Company of the terms and conditions of the assignments. The material portions of such document read:

"To: Strevell-Paterson Finance. . . .

"For the purpose of inducing you: to purchase or accept notes, contracts, mortgages or leases to be executed, endorsed, or assigned by, undersigned: * * * we make the following statements, representations and agreements * * *.

* * * * * *

"We agree that we will faithfully comply with all the terms and conditions of all agreements executed or to be executed by undersigned; that all agreements contained herein shall continue to bind us irrespective of the terms of any other agreements executed or to be executed by undersigned and that you shall at all times for all sums due you, have a lien upon any of our property or credits in your possession or otherwise, and the right to charge the sums due or to become due to you against the same.

* * * * * *

"* * * All of the undersigned waive notice of the acceptance of this guaranty and of notice of nonpayment, demand or protest of any note or draft signed, accepted or endorsed by said Dealer, and any other notices required by law, and you may renew or extend any notes or other obligations of purchasers and/or of the Dealer or accept partial payments thereon or settle, release, compound or compromise any of the same and/or collect upon or otherwise liquidate paper held by you in any manner you may deem advisable without impairing the obligations of any of the undersigned."

The pertinent provisions of the assignment contracts read:

"For Value Received, the undersigned does hereby sell, assign, transfer and set over to Strevell-Paterson Finance Corporation, a corporation, as Assignee, all of his, its or their right, title and interest in and to the property described in the within contract, together with all moneys due or to become due thereunder.

"The undersigned jointly and severally guarantee, unconditionally, the performance of said contract according to its terms and conditions, including the payment of all moneys now or hereafter owing in connection therewith. The undersigned further agrees, upon default of the purchaser in the performance of any of the terms of said contract, to pay

---

1. Hereinafter called the Finance Corporation.

to the assignee, upon demand, all moneys remaining unpaid hereon, and it shall not be necessary for said assignee to pursue or exhaust any remedy against the purchaser as a condition precedent to the liability of the undersigned on this guaranty.

\* \* \* \* \* \*

"For the purpose of inducing the purchase of this contract, the undersigned submits the customer's statement which is substantially true to the best knowledge of the undersigned."

On December 4, 1953, the amount in such reserve account, as found by the referee, was $5,987. On that date the total amount due on contracts outstanding and for which Qualifreeze Company and the individual partners were contingently liable, was in excess of $50,000. Thereafter, the Finance Corporation liquidated such accounts and sustained a loss of $2,532.04, which it charged against the reserve account, leaving a balance in such account of $3,123.47.[2]

Prior to bankruptcy it was the practice of the Finance Corporation to notify Qualifreeze Company before charging a loss on a contract against such reserve account. The Finance Corporation did not notify the trustee, after bankruptcy, of its intention to charge losses against such reserve account before making such charges.

Upon his appointment, the trustee requested the Finance Corporation to advise him with respect to the contracts held and the amount of the reserve account. The Finance Corporation advised the trustee that it had contracts aggregating between $50,000 and $60,000 and had approximately $5,000 in the reserve account. From time to time, the trustee checked with the Finance Corporation by telephone with respect to the status of the reserve account. From time to time the Finance Corporation released and paid over to the trustee a portion of the reserve account.

Pursuant to an order of the Bankruptcy Court, the Finance Corporation, on May 16, 1958, submitted and filed with the Bankruptcy Court an accounting, showing the credits, charges and disbursements with respect to such reserve account, and a credit balance of $3,123.47, which had been paid to the trustee.

The trustee filed a petition with the referee, seeking an order requiring the Finance Corporation to pay to the trustee the amount of $2,532.04, charged to the reserve account after bankruptcy ensued. The referee held that such amount was wrongfully charged to the reserve account, because the charges were made without first giving notice to the trustee.

The financial statement and agreements which were made as an inducement to the purchase by the Finance Corporation of the conditional sales contracts gave the Finance Corporation an unqualified right to charge sums due it against the reserve account, and that without notice to or demand upon Qualifreeze Company or the individual partners. Such financial statement agreement further authorized the Finance Corporation to "liquidate paper held by" it "in any manner" it might "deem advisable."

We are of the opinion that neither notice nor demand on the trustee was necessary to the right of the Finance Corporation to make the charges against the reserve account.

Moreover, the trustee could not have complied with the demand for payment, had it been made, and demand upon the trustee would have served no useful purpose.

The order is affirmed.

2. The discrepancy between the total of $5,655.51 accounted for and the $5,987 found by the referee is not clarified by the record.